Cortlin H. Lannin (Bar No. 266488)
Amy S. Heath (Bar No. 312516)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile: (415) 955-6558
Email: clannin@cov.com
Email: aheath@cov.com

*Counsel for Defendant*
*The Procter & Gamble Co.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LORAINE MCWHORTER AND SAMEER SHARMA, INDIVIDUALS, ON BEHALF OF THEMSELVES, THE GENERAL PUBLIC, AND THOSE SIMILARLY SITUATED,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>        Defendant. | Civil Case No.: 3:24-cv-00806-AMO<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        August 1, 2024<br>Time:        2:00 PM<br>Location:   Courtroom 10 – 19th Floor<br>Judge:      Hon. Araceli Martínez Olguín |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION .......................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

INTRODUCTION .......................................................................................................................... 1

BACKGROUND ............................................................................................................................ 3

      A.      P&G's Pantene and Herbal Essences Shampoos and Conditioners ................................. 3

      B.      Plaintiffs' Allegations ............................................................................................... 6

LEGAL STANDARD ..................................................................................................................... 8

ARGUMENT .................................................................................................................................. 8

I.      PLAINTIFFS FAIL TO PLEAD THAT P&G MADE A FALSE OR MISLEADING
STATEMENT OR OMISSION. ........................................................................................... 8

      A.      No Reasonable Consumer Would Understand the Natural Origin Claims As
Referring to the Number of Ingredients in Each Product.................................... 10

      B.      No Reasonable Consumer Would Believe the Natural Origin Claims Exclude Water
When the Labels Disclose That They Include Water........................................... 12

      C.      Plaintiffs Allege No Facts Supporting a Theory That the Natural Origin Claims Are
False When Water Is Included. .......................................................................... 13

      D.      Plaintiffs Cannot State a "Misleading" Claim by Substituting Their Own
Assumptions for Explanations on the Label....................................................... 14

      E.      The Complaint Does Not Identify an Actionable Omission. ............................... 17

II.      PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS................................. 18

      A.      The Court Lacks Jurisdiction To Hear the Equitable UCL, FAL, and CLRA Claims
(Counts 2, 3, and 5). ......................................................................................... 19

      B.      Plaintiffs Do Not Sufficiently Allege a Claim Under Any Prong of the UCL
(Count 5)........................................................................................................... 20

      C.      The Common-Law Claims Suffer From Multiple Defects (Counts 1, 4). ........... 20

III.      PLAINTIFFS LACK STANDING TO ASSERT CERTAIN ASPECTS OF THEIR
CLAIMS............................................................................................................................ 21

CONCLUSION ............................................................................................................................ 23

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**                                                                                                                              Page(s)

*Ang v. Bimbo Bakeries USA, Inc.*,
    2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ...................................................................22

*In re Apple Processor Litig.*,
    2022 WL 2064975 (N.D. Cal. June 8, 2022) ......................................................................20

*In re Apple Processor Litig.*,
    2023 WL 5950622 (9th Cir. Sept. 13, 2023) ......................................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................................8

*In re Bang Energy Drink Mktg. Litig.*,
    2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) ......................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................................8

*Brookside Assocs. v. Rifkin*,
    49 F.3d 490 (9th Cir. 1995) ................................................................................................17

*Bruton v. Gerber Prods. Co.*,
    2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ......................................................................22

*Chaplin v. Walmart, Inc.*,
    2023 WL 4843956 (N.D. Cal. May 25, 2023) ....................................................................22

*Cheslow v. Ghirardelli Chocolate Co.*,
    445 F. Supp. 3d 8 (N.D. Cal. 2020)....................................................................................22

*Collyer v. Catalina Snacks Inc.*,
    2024 WL 202976 (N.D. Cal. Jan. 18, 2024) .................................................... 9, 10, 16, 21

*Cullen v. Netflix, Inc.*,
    880 F. Supp. 2d 1017 (N.D. Cal. 2012)..............................................................................20

*Dana v. Hershey Co.*,
    180 F. Supp. 3d 652 (N.D. Cal. 2016)................................................................................18

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018)...............................................................................................23

*Dinan v. Sandisk LLC*,
    2019 WL 2327923 (N.D. Cal. May 31, 2019) ....................................................................12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Drum v. San Fernando Valley Bar Assn.*,
  182 Cal. App. 4th 247 (2010)..........................................................................................20

*Forrett v. Gourmet Nut, Inc.*,
  634 F. Supp. 3d 761 (N.D. Cal. 2022)..............................................................................19

*Haley v. Macy's, Inc.*,
  263 F. Supp. 3d 819 (N.D. Cal. 2017)..............................................................................14

*Ham v. Hain Celestial Grp., Inc.*,
  70 F. Supp. 3d 1188 (N.D. Cal. 2014)..............................................................................22

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
  2019 WL 2515919 (N.D. Cal. June 18, 2019) ..................................................................23

*Hodsdon v. Mars*,
  162 F. Supp. 3d 1016 (N.D. Cal. 2016).............................................................................18

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009).......................................................................................8, 17

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018)...............................................................................................3

*Klammer v. Mondelez Int'l, Inc.*,
  2023 WL 105095 (N.D. Cal. Jan. 4, 2023) ................................................................11, 12

*Kumandan v. Google LLC*,
  2022 WL 103551 (N.D. Cal. Jan. 11, 2022) .....................................................................17

*La Barbera v. Ole Mexican Foods Inc.*,
  2023 WL 4162348 (C.D. Cal. May 18, 2023)........................................................9, 12, 16

*Lazar v. Superior Ct.*,
  909 P.2d 981 (Cal. 1996)...................................................................................................21

*Lee v. Nature's Path Food, Inc.*,
  2023 WL 7434963 (S.D. Cal. Nov. 9, 2023).......................................................................8

*Lopez v. Zarbee's, Inc.*,
  2023 WL 210878 (N.D. Cal. Jan. 17, 2023) .....................................................................22

*Lowe v. Edgewell Pers. Care Co.*,
  2024 WL 150758 (N.D. Cal. Jan. 12, 2024) .....................................................................14

*Madrigal v. Hint, Inc.*,
  2017 WL 6940534 (C.D. Cal. Dec. 14, 2017)...................................................................21

*McGinity v. Procter & Gamble Co.*,
  69 F.4th 1093 (9th Cir. 2023)....................................................................................*passim*

*Mier v. CVS Pharmacy, Inc.*,
    2024 WL 121880 (C.D. Cal. Jan. 10, 2024)..............................................................13, 15

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021).....................................................................................*passim*

*Mustakis v. Chattem, Inc.*,
    2022 WL 714095 (E.D.N.Y. Mar. 9, 2022) ...............................................................11

*Nacarino v. KSF Acquisition Corp.*,
    642 F. Supp. 3d 1074 (N.D. Cal. 2022).....................................................................23

*In re ON24, Inc. Sec. Litig.*,
    2024 WL 979951 (N.D. Cal. Mar. 5, 2024) ...............................................................13

*Orellana v. Mayorkas*,
    6 F.4th 1034 (9th Cir. 2021).....................................................................................13

*Reynolds v. Coca-Cola Co.*,
    2023 WL 7093683 (N.D. Cal. Oct. 25, 2023) ...........................................................23

*Robles v. GOJO Indus., Inc.*,
    2023 WL 4946601 (9th Cir. Aug. 3, 2023) ...............................................................13

*Smith v. Apple, Inc.*,
    2023 WL 2095914 (N.D. Cal. Feb. 17, 2023) ...........................................................19

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020).....................................................................................19

*Steiner v. Vi-Jon Inc*,
    2024 WL 1181002 (N.D. Cal. Mar. 18, 2024) ...............................................3, 8, 13, 15

*Tietsworth v. Sears, Roebuck & Co.*,
    2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ...........................................................18

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ..................................................................................................8

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015).....................................................................21

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000).....................................................................................8

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012).....................................................................................18

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b)..................................................................................................................8, 14, 17

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 1, 2024, at 2:00 PM, or as soon thereafter as the matter may be heard, before the Honorable Araceli Martínez-Olguín, in Courtroom 10 of the United States District Court, Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, Defendant The Procter & Gamble Company ("P&G") will and hereby does move to dismiss pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) Plaintiffs Loraine McWhorter's and Sameer Sharma's Complaint for lack of standing and failure to state a claim upon which relief may be granted.  The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, documents that are incorporated by reference into the Complaint or are judicially noticeable, documents on file with the Court, and further evidence and argument as the Court may permit.

## STATEMENT OF ISSUES TO BE DECIDED

Whether Plaintiffs in this false advertising case have stated a claim for relief where they allege multiple inconsistent and implausible theories of deception that disregard the plain language on the labels of each challenged Product; and where their claims suffer from other fundamental defects.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This case concerns Pantene and Herbal Essences shampoos and conditioners that are marketed by P&G and that contain a statement on their front label that a certain percentage of the product is made of "naturally derived ingredients" or is of "natural origin."  The back label of every product explains exactly what these claims mean, as reflected in this exemplar from one Pantene product:



1   That language explains that the percentage of each product that is from "naturally derived ingredients" or

2   of "natural origin" encompasses (1) purified water and (2) natural source ingredients with minimal

3   processing.  Many labels, like this one, further explain that "[a]fter processing, natural source ingredients

4   maintain ≥ 50% of their natural origin material."

5         Plaintiffs Loraine McWhorter and Sameer Sharma insist that the "naturally derived ingredients"

6   and "natural origin" claims on the front of each product are false and misleading, but they do not seem to

7   be entirely sure why.  They allege at least four different and often conflicting theories of deception that

8   disregard the plain language of the labels and are thus implausible.

9         *First*, Plaintiffs allege that they thought the claimed percentage referred to the number of "natural

10  origin" or "naturally derived" ingredients in each product, rather than to the proportion of the product as

11  a whole that was made from such ingredients.  In other words, if a conditioner with 20 ingredients was

12  represented to be "96% natural origin," Plaintiffs were supposedly under the false impression that 19 of

13  the ingredients were "natural origin."  But no reasonable consumer would interpret the claims in this

14  counterintuitive way, making this theory implausible on its face.  Even if there were any ambiguity on this

15  point, furthermore, Ninth Circuit authority instructs that a reasonable consumer can be expected to consult

16  clarifying information elsewhere on the package.  That information, including the explanatory text and

17  ingredient list, would quickly confirm that the claims do not refer to the number of ingredients.

18        *Second*, Plaintiffs abandon their first theory and allege that, assuming a reasonable consumer

19  would in fact understand the "natural origin" or "naturally derived" percentage as referring to the

20  composition of the product as a whole, the claims would still be false "once water is excluded."  But the

21  back label explicitly states that purified water *is* included in the calculation, and water is the first ingredient

22  listed for each product.  Any theory that pretends that clarifying information does not exist is untenable.

23        *Third*, Plaintiffs contend that even if water is included in the percentage, "on information and

24  belief" the claims would still be false.  This theory is difficult to square with their second and facially

25  inconsistent with Plaintiffs' concession elsewhere in the Complaint that the claims "could be true" if water

26  is included.  Compl. ¶ 55.  In all events, Plaintiffs allege no facts that would make this theory plausible.

27        *Finally*, Plaintiffs allege that the claims are misleading because P&G has not adopted one of many

28  definitions of "natural origin" or "naturally derived" that they would prefer, including that such ingredients

are (for example) "extracted directly from plants." But the labels say what the claims mean, and Ninth Circuit authority forecloses Plaintiffs' attempt to substitute their own definition for one that is disclosed on the labels and readily available to reasonable consumers.

Plaintiffs' failure to state a plausible theory of deception dooms all their claims, but those claims suffer from other flaws warranting dismissal. The Court lacks equitable jurisdiction to hear the UCL, FAL, and CLRA restitution claims, and the fraud and negligent misrepresentation claims are subject to the economic loss rule. Plaintiffs also lack Article III standing to pursue claims for products they never purchased or to seek injunctive relief. For those and the additional reasons set forth below, the Complaint should be dismissed in its entirety.

## BACKGROUND

### A.    P&G's Pantene and Herbal Essences Shampoos and Conditioners

P&G markets Pantene and Herbal Essences brand shampoos and conditioners in a variety of formulas. Compl. ¶ 2. The front label of all of the Pantene and Herbal Essences products at issue in this case (the "Products") state that a certain percentage of the product is made from "naturally derived ingredients" or is of "natural origin." *See id.* ¶¶ 29-30, 34-35, 41 (collectively, the "Natural Origin Claims").[1] The back panel of every shampoo and conditioner bearing such a claim includes definitional text that explains what P&G means by "naturally derived" or "natural origin." Plaintiffs' claims all rely on the Products' labeling, and the Complaint and Appendix extensively quote and include images of the Products' front and back labels. They are thus incorporated by reference into the Complaint and are properly considered on a motion to dismiss. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *Steiner v. Vi-Jon Inc*, 2024 WL 1181002, at *2 (N.D. Cal. Mar. 18, 2024) (Martínez-Olguín, J.) (ruling that label is incorporated by reference in case challenging labeling statements).

There are generally three different ways in which these claims are presented to consumers.

---

[1] While the Complaint includes a single allegation purporting to implicate "*all* varieties of Herbal Essences and Pantene shampoos, conditioners, and hair masks," *see* Compl. ¶ 28 (emphasis added), from the remainder of the Complaint and context P&G understands Plaintiffs' claims to target only those products identified in the Complaint that include one of the Natural Origin Claims. *See, e.g.*, Compl. ¶¶ 28 (list of products), 29, 30, 33 (incorporating Appendix B, which "includes the front and back labels for each of the Herbal Essences and Pantene Products").

*First*, the front label of Pantene Apricot & Shea Butter Conditioner and similar products states "96% Naturally Derived** Ingredients." Compl. App'x B at 59. The back label explains what P&G means by the front-label statement: "**Natural source ingredients with limited processing and purified water create this 96% natural origin shampoo. After processing, natural source ingredients maintain ≥ 50% of their natural origin material." *Id.* ¶¶ 44-45. Asterisks connect the claim and explanatory text. Other Pantene Products have the same type of labeling. *See* Compl. App'x B at 58-61.



**Front Label,
Pantene Apricot & Shea Butter Conditioner**



**Back Label, Pantene Apricot & Shea Butter Conditioner**

*Second*, the front label of Herbal Essences Argan Oil Shampoo and other products like it includes the phrase "90% Natural Origin." *Id.* ¶ 34. The back label includes the same phrase: "90% Natural Origin*." Directly below, P&G explains what it means by "% natural origin": "*Natural source ingredients with limited processing and purified water. After processing, natural source ingredients maintain ≥ 50% of their natural origin material." *Id.* ¶¶ 36-37. Again, asterisks connect the claim and its

explanatory text.  Certain other versions of Herbal Essences products, such as the White Grapefruit &

Mint Shampoo and the Coconut Oil Conditioner, have similar labels.  *See* Compl. App'x B at 48, 54.



**Front Label,**
**Herbal Essences Argan Oil Shampoo**

**Back Label, Herbal Essences Argan Oil Shampoo**

*Finally*, the front label of Herbal Essences White Grapefruit & Mint Conditioner also says "90%

Natural Origin."  App'x B at 48.  The back label incorporates the explanation of what "90% natural origin"

means into the product description at the top of the label: "Since 1971, we've believed in bringing the

beauty & experience of nature to your hair.  Now we've partnered with Royal Botanical Gardens, KEW,

to endorse our real botanicals.  It is combined with natural source ingredient materials with limited

processing & purified water to create this 90% natural origin conditioner."  *Id.* ¶ 38 & App'x B at 48.

Other Herbal Essences Products, such as the Coconut Milk Shampoo and Conditioner and the Golden

Moringa Oil Shampoo and Conditioner, have similar labels.  *See* Compl. App'x B at 46, 47, 49, 50, 52,

53.



**Front Label, Herbal Essences
White Grapefruit & Mint Conditioner**

**Back Label, Herbal Essences
White Grapefruit & Mint Conditioner**

### B.    Plaintiffs' Allegations

Plaintiff McWhorter alleges that she purchased Herbal Essences Argan Oil Shampoo and Herbal Essences White Charcoal Conditioner from a Walmart "beginning in November 2022." Compl. ¶ 83. Plaintiff Sharma alleges that he purchased Pantene Apricot & Aloe Vera Shampoo and Conditioner from a Walmart around November 11, 2023. *Id.* ¶ 88. Neither Plaintiff appears to have read the explanations of the Natural Origin Claims that appear on each product they allegedly purchased: Plaintiff McWhorter does not mention the explanations at all, *see* Compl. ¶¶ 83-87, while Plaintiff Sharma alleges that he "overlooked the asterisks and associated statement due to their small size," *id.* at ¶ 91. Plaintiffs do not allege that they performed any analysis or testing of the Products before filing their Complaint.

Plaintiffs' theories of deception are challenging to parse. They allege at a high level that the labeling of the Products "suggests to reasonable consumers nationwide that X% or more (generally, ≥ 90%) of the ingredients in the Products originate in nature and/or are 'natural,'" Compl. ¶ 4, and they appear to allege multiple inconsistent theories as to why that "suggestion" is false and/or misleading.

First, both Plaintiffs allege that they understood the Natural Origin Claims to mean "that the product was comprised of ingredients of which [90 or 96]% were natural origin." *Id.* ¶¶ 84, 89. This theory is based solely on the number of ingredients in each product. If a given shampoo is represented to be 96% natural origin and lists 20 ingredients, for example, Plaintiffs contend a reasonable consumer would believe that at least 19 of the ingredients were natural origin, no matter how *much* of each ingredient is present in the product. Plaintiffs allege they would not have purchased or would have paid less for the Products had P&G "adequately disclosed the number of ingredients that were naturally derived." *Id.* ¶¶ 85, 90.

Second, the Complaint alleges that if the Natural Origin Claims are instead based on the composition of each product as a whole by weight, the claims are literally false if water is excluded from the analysis, because in that case "over 90% of the ingredients in the Products are not natural and do not originate in nature; rather, they are of industrial-origin." *Id.* ¶ 5. This theory ignores, among other things, that the label of every Product discloses that purified water is included in the analysis and that water is the first item by weight listed on every ingredient list.

Third, Plaintiffs allege "upon information and belief"—with no supporting factual allegations— that even if the Natural Origin Claims are based on composition by weight and water is included, "the claim is not true." *Id.* ¶¶ 5, 57.

Finally, Plaintiffs allege that the Natural Origin Claims are misleading because the Products do not satisfy their preferred interpretation of the claims, even though P&G never promised that (for example) a certain percentage of the Products were "extracted directly from plants" or "exclude industrial chemical modifications." *See id.* at ¶¶ 9, 55.

Based on these allegations, Plaintiffs bring a putative class action on behalf of California consumers. *Id.* ¶ 93. Although the Complaint makes passing references to a subclass, it does not define one, so P&G understands that only a California class is at issue. *See id.* ¶¶ 93-99. Plaintiffs assert claims for fraud and negligent misrepresentation, as well as for violation of California's Consumers Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), and Unfair Competition Law ("UCL").

**LEGAL STANDARD**

"[P]laintiffs must demonstrate [Article III] standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). When a plaintiff lacks Article III standing, the complaint must be dismissed for lack of subject matter jurisdiction. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A complaint must also "state[] a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Mere "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Id.* at 678. Instead, a plaintiff must allege "sufficient factual matter" that, taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* These "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545 (citation omitted).

Claims of the type asserted here that "sound in fraud" must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). A plaintiff thus must allege with particularity "the who, what, when, where, and how" of the misconduct charged, as well as explain why any allegedly false statements are false. *Id.* at 1124 (internal quotation marks and citation omitted).

**ARGUMENT**

**I.    Plaintiffs Fail To Plead That P&G Made a False or Misleading Statement or Omission.**

Plaintiffs' claims require them to plead that P&G made a false or misleading statement or omission about the Products. *E.g.*, *Lee v. Nature's Path Food, Inc.*, 2023 WL 7434963, at *4-5 (S.D. Cal. Nov. 9, 2023) (dismissing consumer protection, fraud, and negligent misrepresentation claims for failure to plead an actionable misstatement). Moreover, Plaintiffs' statutory claims are governed by the "reasonable consumer" test, which requires "more than a mere possibility that defendant's product might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Steiner*, 2024 WL 1181002, at *4 (cleaned up). "Rather, the test requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (cleaned up). "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful

interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882-83 (9th Cir. 2021) (quoting *Bell v. Publix Super Mkts. Inc.*, 982 F.3d 468, 477 (7th Cir. 2020)).

In applying the reasonable consumer test, courts consider the "full context of the label," as well as the context in which the product is marketed and general knowledge. *See, e.g.*, *Collyer v. Catalina Snacks Inc.*, 2024 WL 202976, at *4-5 (N.D. Cal. Jan. 18, 2024) (Martínez-Olguín, J.). For example, in *Moore v. Trader Joe's Co.*, the Ninth Circuit analyzed the claim "100% New Zealand Manuka Honey." 4 F.4th at 882. It recognized some ambiguity in the meaning of "100%": "100% could be a claim that the product was 100% Manuka honey, that its contents were 100% derived from the Manuka flower, or even that 100% of the honey was from New Zealand." *Id.* As a result, "reasonable consumers would necessarily require more information" to understand the claim's meaning, and the Ninth Circuit drew on general knowledge about the foraging nature of bees, the price of the product, and other aspects of the label to conclude as a matter of law that a reasonable consumer would not understand the claim to mean that 100% of the honey was derived from the Manuka flower. *Id.* at 882-85; *see also La Barbera v. Ole Mexican Foods Inc.*, 2023 WL 4162348, at *10 (C.D. Cal. May 18, 2023) (observing "*Moore* imagines a 'reasonable consumer' who is intelligent, someone capable of analyzing different pieces of information, engaging in logical reasoning, and drawing 'contextual inferences' from a product and its packaging," and who "does not just view one phrase or image in isolation, but looks at the entirety of the packaging together").

Moreover, the Ninth Circuit recently confirmed that unless the front label is "unambiguously deceptive," any "ambiguity can be resolved by reference to the back label," including the ingredients list and other statements. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098-99 (9th Cir. 2023). In *McGinity*, the plaintiff alleged that the packaging of "Pantene Pro-V Nature Fusion" shampoo and conditioner products was deceptive because the label suggested the products "are natural, when, in fact, they contain non-natural and synthetic ingredients." *Id.* at 1096. The Ninth Circuit found "some ambiguity as to what 'Nature Fusion' means in the context of its packaging" but concluded the claim was not "unambiguously misleading." *Id.* at 1098-99. As a result, the Ninth Circuit considered the back label, and it observed that mentions of avocado oil, together with an ingredient list that contained synthetic

ingredients, clarified that "Nature Fusion" referred to a mix of natural and synthetic ingredients. *Id.* at 1099.

As discussed above, Plaintiffs offer multiple inconsistent theories of how the Natural Origin Claims are supposedly false or misleading. None are sufficient to state a claim.

### A.    No Reasonable Consumer Would Understand the Natural Origin Claims As Referring to the Number of Ingredients in Each Product.

Plaintiffs first contend that a reasonable consumer would understand the Natural Origin Claims as referring to the number of ingredients of the product that are of natural origin or naturally derived, rather than to the percentage of the product as a whole that is. Compl. ¶¶ 84-86; 89-90. For example, Plaintiffs allege that of 24 ingredients listed for Pantene Passion Fruit & Cocoa Butter Shampoo, only water, sodium chloride, lemon peel oil, passion fruit extract, and cocoa butter "are unequivocally natural in origin," and so "at most 25% of the Essential Botanicals ingredients are naturally derived." *Id.* ¶ 54.[2] According to Plaintiffs, the claims are thus literally false. However, this theory leads to absurd results and is implausible as a matter of law. Under Plaintiffs' theory, a flavored water beverage that was entirely water except for 0.01% artificial flavoring by mass would be considered 50% natural origin and 50% artificial origin. An 11-ingredient beverage composed of 99% water and 0.1% each of 10 artificial flavorings by mass would be considered 9% natural origin and 91% artificial origin. This theory of deception confounds common sense, and there are no factual allegations from which the Court could conclude that most reasonable consumers would understand the Natural Origin Claims in such an illogical manner. *See Collyer*, 2024 WL 202976, at *4-5 (claim that consumers would think cereal with 0% sugar contained fruit was implausible as a matter of law).

Even were it plausible a reasonable consumer could interpret the claims in this way—and it is not—the alleged existence of different possible meanings establishes only that the front label may contain an ambiguity, not that it is "unambiguously deceptive." *McGinity*, 69 F.4th at 1098; *see Moore*, 4 F.4th at 882 (meaning of "100% New Zealand Manuka Honey" was ambiguous). In those circumstances,

---

[2] As discussed *infra* (at 14), here and elsewhere Plaintiffs do not allege facts to support their conclusory allegations as to which ingredients are "natural in origin" and which are not.

*McGinity* dictates that the back labels must be considered. *McGinity*, 69 F.4th at 1098 ("the front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label"). Those back labels would clarify any ambiguity about whether the Natural Origin Claims refer to the product as a whole or the number of ingredients. First, those back labels inform consumers that, for example, "**Natural source ingredients with limited processing & purified water create this *90% natural origin shampoo*." App'x B at 60 (Pantene Passion Fruit & Cocoa Butter Shampoo) (emphasis added). As another example, the Herbal Essences White Grapefruit & Mint Conditioner back label states that "natural source ingredient materials with limited processing & purified water . . . create this *90% natural origin conditioner*." App'x B at 48 (emphasis added). That language confirms that the Natural Origin Claims refer to the proportion of the product as a whole that is naturally derived, not to the number of discrete ingredients that are. *See Moore*, 4 F.4th at 883-85 (interpreting meaning of "100% New Zealand Manuka Honey" based on label as a whole and general knowledge).

In addition, the ingredient list would also clarify any ambiguity on this issue. *Klammer v. Mondelez Int'l, Inc.*, 2023 WL 105095, at *5 (N.D. Cal. Jan. 4, 2023) (dismissing deception claims because consumer with "questions" about the front label could "easily see" answer by "glancing at the adjacent ingredient list"). In fact, just as in *McGinity*, Plaintiffs plead themselves *out* of this theory. They allege that a reasonable consumer would readily determine that far more than 10% of the ingredients of each product are not "naturally derived" or "natural origin." For example, they allege that "of the 24 ingredients listed for the Essential Botanicals Passion Fruit & Cocoa Butter Shampoo, 18 are industrially-produced chemicals that most consumers would not identify as 'natural' or 'naturally derived . . . .'" Compl. ¶ 54. Plaintiffs' theory, which necessarily depends on a reasonable consumer ignoring this information, is untenable. *See McGinity*, 69 F.4th at 1099 ("The ingredients list, which McGinity alleges includes many ingredients that are synthetic and that a reasonable consumer would not think are natural, clarifies that the rest of the ingredients are artificial and that the products thus contain both natural and synthetic ingredients"); *Mustakis v. Chattem, Inc.*, 2022 WL 714095, at *2-3 (E.D.N.Y. Mar. 9, 2022) (disclosure of synthetic ingredients including salicylic acid precluded plaintiffs' theory that Selsun Blue Naturals anti-dandruff shampoo was only made of natural ingredients).

1    In sum, no reasonable consumer would believe that the Natural Origin Claims were based simply

2  on the number of ingredients, and the implausibility of that argument ends the analysis.  But even were

3  there ambiguity on that point, a quick glance at the back panel offers numerous sources of information

4  that would disabuse the reasonable consumer of that notion.

**B.**    **No Reasonable Consumer Would Believe the Natural Origin Claims Exclude Water When the Labels Disclose That They Include Water.**

7    Plaintiffs' second theory of deception strips important context out of the Product labels altogether.

8  They reluctantly concede that the Natural Origin Claims "could be true" if the claims are based on weight

9  and water is included in the calculation.  Compl. ¶ 55.  To gloss over that inconvenient fact, Plaintiffs

10  allege that the Natural Origin Claims are literally false "once water is excluded," because without water,

11  "over 90% of the ingredients in the Products are not natural and do not originate in nature; rather, they are

12  of industrial-origin." *Id.* ¶ 5.  The problem for Plaintiffs is that each Product label explicitly discloses that

13  the Natural Origin Claims account for the inclusion of purified water and that water is the first listed

14  ingredient of each Product.

15    Plaintiffs do not identify anything about the front label that would lead a reasonable consumer to

16  believe that the Natural Origin Claims exclude water or are otherwise "unambiguously deceptive."  As a

17  result, under *McGinity*, the back labels must be considered.  *McGinity*, 69 F.4th at 1098.  Plaintiffs

18  repeatedly acknowledge that the back label contains an asterisked statement that explains that the Natural

19  Origin Claims are based on the inclusion of "natural source ingredients with limited processing & *purified*

20  *water*." *See* Compl. ¶¶ 29-30, 36-38, 44-45 (emphasis added); App'x B; *Dinan v. Sandisk LLC*, 2019 WL

21  2327923, at *7 (N.D. Cal. May 31, 2019) (observing asterisked statements "directly inform[] the consumer

22  that he should be aware that he needs to look elsewhere on the package before applying his own

23  assumptions").  Purified water also features prominently as the first ingredient in each Product's ingredient

24  list. *See McGinity*, 69 F.4th at 1099 (ingredients list clarified ambiguity); *Klammer*, 2023 WL 105095, at

25  *5 (same).  Any theory of deception based on the proposition that a reasonable consumer would

26  understand the Natural Origin Claims to exclude water when the labels say nothing of the sort, and in fact

27  *disclose* that they include purified water, thus fails as a matter of law. *La Barbera*, 2023 WL 4162348, at

28  *11 (observing reasonable consumer is "not a chump").

A trio of cases involving hand sanitizer is directly on point.  In each case, the front label included a claim that the product "Kills 99.99% of all Germs*" or "Kills More than 99.99% of Germs*."  *See Robles v. GOJO Indus., Inc.*, 2023 WL 4946601, at *1 (9th Cir. Aug. 3, 2023); *Steiner*, 2024 WL 1181002, at *1, 5; *Mier v. CVS Pharmacy, Inc.*, 2024 WL 121880, at *1 (C.D. Cal. Jan. 10, 2024).  An asterisked statement on the back label clarified that the products killed 99.99% of "many common harmful germs" or "most common germs that may cause illness," depending on the product.  *Robles*, 2023 WL 4946601, at *1; *Steiner*, 2024 WL 1181002, at *5; *Mier*, 2024 WL 121880, at *1.  Plaintiffs alleged the claims were false or misleading because the products did not kill 99.99% of *all* germs or 99.99% of germs commonly found on hands, but courts rejected those theories.  In *Mier*, the court explained that the plaintiff's "misunderstanding of the label only makes sense if the Court or a consumer were to ignore the statement on the back label.  Under *McGinity*, however, the Court cannot do so."  2024 WL 121880, at *8.  And in *Steiner*, this Court explained that the asterisked back-label statement "provides a meaningful qualifier that diminishes consumer expectation regarding the Product's efficacy against common germs on hands."  *Steiner*, 2024 WL 1181002, at *5.  Applied here, Plaintiffs cannot state a claim by arbitrarily ignoring the label's explanation that the Natural Origin Claims are based in part on the presence of purified water.  *See McGinity*, 69 F.4th at 1098-99; *Steiner*, 2024 WL 1181002, at *5.

C. **Plaintiffs Allege No Facts Supporting a Theory That the Natural Origin Claims Are False When Water Is Included.**

Plaintiffs next allege that even *if* the Natural Origin Claims are based on weight, and even *if* they account for water, the claims are still false.  It is challenging to square this with their second theory, because as noted above they concede that the Claims "could be true" when accounting for the inclusion of water, which they admit is (1) the first ingredient of every product by weight, and (2) properly characterized as "natural origin" or "naturally derived."  *See id.* ¶¶ 50-51, 54-55.  That Plaintiffs' own allegations contradict this theory is reason enough to reject it.  See *Orellana v. Mayorkas*, 6 F.4th 1034, 1043 (9th Cir. 2021) (observing "the complaint itself undermines [plaintiffs'] theory of the case and renders it implausible"); *In re ON24, Inc. Sec. Litig.*, 2024 WL 979951, at *6 (N.D. Cal. Mar. 5, 2024) (complaint did not state plausible claim where it contained internally inconsistent allegations on key facts).

Even were that not so, the Complaint does not include sufficient factual allegations to make this theory plausible.  Plaintiffs do not allege, for example, the relative weight of water or any of the other ingredients of any of the Products, much less than they have done any testing to confirm those weights. Nor do they allege which of the other ingredients are "natural origin" or "naturally derived" and which allegedly are not.  In other words, Plaintiffs claim that the relative composition of the Products and the nature of each ingredient renders the Natural Origin Claims false without alleging actual facts on either front.  That pleading failure warrants dismissal under Rule 9(b).  *See, e.g.*, *In re Bang Energy Drink Mktg. Litig.*, 2020 WL 4458916, at *4-5 (N.D. Cal. Feb. 6, 2020) (dismissing complaint under Rule 9(b) because plaintiffs "d[id] not allege any facts regarding the actual concentration of the challenged ingredients or the concentration that would be required to impart the benefits [defendant] advertises").

By way of example, Plaintiffs allege that the Natural Origin Claims are false because Pantene Apricot and Shea Butter Conditioner is "on information and belief, > 4% non-naturally-derived ingredients by weight."  Compl. ¶ 55.  But "allegations of fraud based on 'information and belief' do not satisfy the particularity requirements of Rule 9(b)."  *Haley v. Macy's, Inc.*, 263 F. Supp. 3d 819, 824 (N.D. Cal. 2017).  The only fact Plaintiffs allege in support of this conclusion is that "excluding water, the top five ingredients by weight" for this product are "stearyl alcohol, behentrimonium chloride, cetyl alcohol, [and] bis-aminopropyl dimethicone," Compl. ¶ 55, which they contend do not qualify as "natural origin" or "naturally derived."  Plaintiffs allege no facts to support that contention.  But even assuming for the sake of argument that those ingredients are not "natural origin" or "naturally derived," that says nothing about the accuracy of the Natural Origin Claims *when water is considered*, as the labels make clear it must be.  Without specific factual allegations as to relative weight, the ingredient list alone is not enough "to nudge Plaintiffs' claims . . . from *possible* to *plausible*."  *See Lowe v. Edgewell Pers. Care Co.*, 2024 WL 150758, at *5 (N.D. Cal. Jan. 12, 2024) (Martínez-Olguín, J.).

### D.   Plaintiffs Cannot State a "Misleading" Claim by Substituting Their Own Assumptions for Explanations on the Label.

Finally, Plaintiffs allege that even if the Natural Origin Claims are literally true, they are still misleading because P&G uses a different definition of "naturally derived" or "natural origin" than Plaintiffs would prefer.  *See, e.g.*, Compl. ¶¶ 55, 58.  Specifically, Plaintiffs contend the labels are

misleading because the claimed percentage of the Product is made of ingredients that are not "natural" (Compl. ¶¶ 4-5), do not "originate in nature" (*id.*), are not "extracted directly from plants" (*id.* ¶ 9), are not "taken directly from nature" (*id.* ¶ 42), are not "entirely plant-based" (*id.* ¶ 39), and involve some degree of "industrial chemical modifications" (*id.* ¶ 55). Plaintiffs' attempt to substitute their own interpretation of the Natural Origin Claims for the label's text is foreclosed by the Ninth Circuit's decisions in *McGinity* and *Moore*.

First, this theory ignores the plain text of the Natural Origin Claims, which state that each product contains ingredients that are naturally "*derived*" or of natural "*origin*." Those words are not surplusage, but Plaintiffs' theory that a reasonable consumer would interpret the claims to mean the ingredients are simply "natural," for example, pretends those qualifiers do not exist.

In addition, and as in *McGinity* and *Moore*, to the extent the Natural Origin Claims are potentially susceptible to multiple interpretations, a reasonable consumer would draw on other sources of information, including the back label, general knowledge, and the price and context in which the products are sold, to understand their meaning. *McGinity*, 69 F.4th at 1099; *Moore*, 4 F.4th at 882-83. All the back labels here inform consumers that the Natural Origin Claims are based on "natural source ingredients with limited processing and purified water," and many further explain that "[a]fter processing, natural source ingredients maintain ≥ 50% of their natural origin material." Those explanations establish that the Natural Origin Claims encompass ingredients that have undergone some degree of processing, rather than being limited to substances "extracted directly from plants" or "taken directly from nature." Compl. ¶¶ 9, 42. As in *Mier*, Plaintiffs' "misunderstanding of the label only makes sense if the Court or a consumer were to ignore the statement on the back label," which *McGinity* precludes. 2024 WL 121880, at *8. "Plaintiffs' theory of the misleading representations accordingly fails to establish how the label is false or misleading when read as a whole." *Steiner*, 2024 WL 1181002, at *5.

General knowledge and the context in which the Products are sold further confirm that Plaintiffs' purported interpretation of the Natural Origin Claims is implausible. First, reasonable consumers who care about the inclusion of natural origin ingredients are presumed to pay attention to the parts of the product label that discuss that attribute, including explanations and the ingredient list on the back label. *See Moore*, 4 F.4th at 884-85 (regular consumers of Manuka honey would be familiar with specialized

index on Manuka honey labels); *Collyer*, 2024 WL 202976, at *5 (consumers of Keto-friendly cereal "'are undoubtedly more likely to exhibit a higher standard of care' in their review of the product label and the ingredient lists").  Indeed, Plaintiffs both allege that they "regularly look[] for natural ingredients before purchasing products and use[] that as a basis for buying and/or comparing similar products."  Compl. ¶¶ 85, 90.  A reasonable consumer who cares about "natural ingredients," having seen the back label explanations and ingredient lists, would not understand the Natural Origin Claims to promise that a certain percentage of the Product is "extracted directly from plants" or any of Plaintiffs' alternative interpretations.  *Id.* ¶ 9.  *See La Barbera*, 2023 WL 4162348, at *10 (observing a reasonable consumer who "cares about any particular quality in a product" is "willing to spend at least a few seconds reading a product's packaging to see if it answers her question" about the product).

Second, reasonable consumers of these Products understand that they are mass-produced shampoos that are sold in supermarkets and "big box" retailers like Walmart, not luxury products sold in expensive hair salons.  *See* Compl. ¶¶ 83, 88.  These consumers would understand that the Products contain ingredients that have undergone some processing and are not, for example, "entirely plant-based" or "extracted directly from plants."  Indeed, Plaintiffs allege that the Products contain many of the same ingredients used in other haircare products.  *Id.* ¶ 5.  As in *Moore*, the discrepancy between what a reasonable consumer would actually expect of these products, based on their price and the context in which they are sold, and what Plaintiffs *say* they would expect, dooms these claims.  *See Moore*, 4 F.4th at 884 (reasoning that reasonable consumers draw inferences about the contents of the product based on price).

Plaintiffs also contend that the Natural Origin Claims are misleading because the British Standards Institute's ISO 16128—which Plaintiffs allege in a conclusory manner that P&G relies on as the basis of its definition of "natural origin" and "naturally derived"—is not freely available to the public and is "very complicated and entirely beyond the ability of an ordinary consumer to understand."  *See* Compl. ¶¶ 59-68.  Plaintiffs' long discussion of this standard is a red herring.  Whether a consumer can understand a manufacturing standard is not the question presented by this case; instead, it is whether a reasonable consumer would find the Natural Origin Claims as explained by the labels misleading.  For all the reasons discussed above, a reasonable consumer would not.

DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS COMPLAINT

Civil Case No.: 3:24-cv-00806-AMO

In sum, the labels here, read as a whole, provide reasonable consumers of the Products with accurate information about them that would clarify any alleged ambiguity about the meaning of the Natural Origin Claims.  The Products do not claim that they are simply "natural" or "directly extracted from plants."  They say that some identified percentage of the product consists of purified water and natural source ingredients with limited processing, and many go on to explain that such that the natural source ingredients maintain at least 50% of their natural origin material.  If either Plaintiff here desires a simply "natural" shampoo or conditioner, or one where almost all the ingredients are "extracted directly from plants" or "taken directly from nature," they are free to search for and purchase such a product.  But no consumer would reasonably believe that is what they were getting with the Pantene and Herbal Essences products at issue here.

### E.    The Complaint Does Not Identify an Actionable Omission.

The Complaint includes a handful of glancing references to purported omissions made by P&G. *See* Compl. ¶¶ 10, 102, 110, 114, 125, 134, 142.  However, Plaintiffs do not identify the information that P&G supposedly omitted, much less with the particularity required by Rule 9(b); nor do they adequately allege a duty to disclose.  This is fatal to any omission theory.

Like their misrepresentation theory, Plaintiffs' omission theory is subject to the heightened pleading requirements of Rule 9(b).  *Kearns*, 567 F.3d at 1127.  Plaintiffs do not identify with specificity any information that they allege P&G concealed from them.  Instead, their theory appears to be that P&G concealed the "true characteristics of the Products."  Compl. ¶ 116.  Given that P&G already explains the meaning of the Natural Origin Claims on the labels and provides other information about the "true characteristics" of the Products, including an ingredients list, it is not clear what other information Plaintiffs believe should have been disclosed but was not.  *See Kumandan v. Google LLC*, 2022 WL 103551, at *8-9 (N.D. Cal. Jan. 11, 2022) (rejecting omission theory where defendant's policies disclosed supposedly omitted information).  In any event, to the extent that Plaintiffs' omission claim simply recasts their flawed misrepresentation claims as omissions, the omission claims fail for the same reasons that the misrepresentation claims do.  *See generally Brookside Assocs. v. Rifkin*, 49 F.3d 490, 497-98 (9th Cir. 1995) (recognizing that "nearly every fraudulent misstatement can also be characterized as a deceitful concealment of the true state of affairs" and declining to "reward" such "artful pleading").

1    The Complaint also does not adequately identify a legal basis for any duty to disclose, as would

2    be required to state an omission claim.  *See, e.g.*, *Hodsdon v. Mars*, 162 F. Supp. 3d 1016, 1026 (N.D.

3    Cal. 2016) (UCL omission claim requires duty to disclose); *Dana v. Hershey Co.*, 180 F. Supp. 3d 652,

4    669 (N.D. Cal. 2016) (same for FAL).  A duty to disclose exists only when a defendant (1) is the plaintiff's

5    fiduciary, (2) has exclusive knowledge of material facts not known to the plaintiff, (3) actively conceals a

6    material fact from the plaintiff, or (4) makes misleading partial representations.  *Wilson v. Hewlett-*

7    *Packard Co.*, 668 F.3d 1136, 1142 (9th Cir. 2012).  Plaintiffs have not alleged that P&G is Plaintiffs'

8    "fiduciary," and there was no "partial" or "incomplete" representation made by P&G regarding the Natural

9    Origin Claims or the composition of the Products, particularly in light of the back-label explanations.  *See*

10   *supra*, Sections I.A-D.  Plaintiffs allege in passing that P&G had "exclusive knowledge" of a material fact

11   or "intentionally concealed" such facts, but they do not identify what facts they are talking about.  *See*

12   Compl. ¶ 117; *Tietsworth v. Sears, Roebuck & Co.*, 2009 WL 3320486, at *4, *8 (N.D. Cal. Oct. 13, 2009)

13   (no duty based on "conclusory" allegations of "exclusive knowledge" and "active concealment").  Finally,

14   Plaintiffs' allegation that they could not have known about the alleged concealment because they "were

15   not experts in chemistry or chemical manufacturing" does not move the needle.  Compl. ¶ 118.  The back

16   label disclosed in plain language that the Natural Origin Claims encompassed ingredients that had

17   undergone limited processing; many further explained that more than 50% of the natural origin material

18   remained.  *Id.* ¶ 29.  No degree in chemistry is required to understand those statements.

19   **II.    Plaintiffs' Claims Fail for Additional Reasons.**

20       Although Plaintiffs' failure to allege a false or misleading statement or omission provides a

21   sufficient ground to dismiss all of their claims, the claims each suffer from multiple other flaws requiring

22   dismissal.  The UCL, FAL, and CLRA claims for restitution and injunctive relief should be dismissed

23   because the Court lacks equitable jurisdiction.  Plaintiffs also have not adequately alleged a claim under

24   any of the UCL's three prongs.  The fraud and negligent misrepresentation claims are subject to dismissal

25   under the economic loss rule, and the fraud claim also fails because Plaintiffs do not adequately allege

26   knowledge of falsity.

27

28

**A.      The Court Lacks Jurisdiction To Hear the Equitable UCL, FAL, and CLRA Claims (Counts 2, 3, and 5).**

Plaintiffs' claims for equitable relief under the UCL, FAL, and CLRA should also be dismissed because Plaintiffs have an adequate legal remedy in the form of monetary damages.  In *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), the Ninth Circuit held that the existence of an adequate legal remedy bars claims for equitable relief, such as restitution.  Here, Plaintiffs have adequate legal remedies through their fraud, misrepresentation, and CLRA damages claims.  The existence of an adequate remedy at law therefore bars (i) their CLRA claim to the extent it seeks restitution and injunctive relief, and (ii) their claims for violations of the UCL and FAL in their entirety.  *See Smith v. Apple, Inc.*, 2023 WL 2095914, at *3 (N.D. Cal. Feb. 17, 2023) (dismissing UCL claim for failure to plead "why monetary damages would be inadequate to make Plaintiffs whole"); *Forrett v. Gourmet Nut, Inc.*, 634 F. Supp. 3d 761, 768 (N.D. Cal. 2022) (dismissing UCL and FAL claims for failure to plead lack of adequate legal remedy).

Plaintiffs attempt to avoid dismissal of their claims under the FAL and UCL by alleging that "[i]f Plaintiffs' and class members' claims at law fail," they "will have no adequate remedy at law by which they can obtain recovery for the economic harm they have suffered."  *See* Compl. ¶¶ 130, 148.  Ninth Circuit precedent squarely forecloses that argument.  In *Guzman v. Polaris Industries Inc.*, the Ninth Circuit held that the district court lacked equitable jurisdiction to hear a UCL claim because the plaintiff had an adequate legal remedy in the form of his CLRA damages claim—even though the CLRA claim was time-barred.  49 F.4th 1308, 1311 (9th Cir. 2022), *cert. denied sub nom. Polaris Indus. Inc. v. Albright*, 143 S. Ct. 2612 (2023).  *Guzman* thus makes clear that the relevant inquiry is not whether Plaintiffs will ultimately prevail on their legal claims, as it was clear the plaintiff in *Guzman* could not prevail on his CLRA claim.  *Id.*  Instead, the question is whether the legal remedy of monetary damages would make Plaintiffs whole.  *Id.*; *Smith*, 2023 WL 2095914, at *3.  Because Plaintiffs do not allege that their legal remedies are inadequate, their equitable claims must be dismissed.  *See In re Apple Processor Litig.*, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) (affirming dismissal of UCL and CLRA claims where plaintiffs "failed to explain how the money they seek through restitution is any different than the money they seek as damages" (cleaned up)).

### B. Plaintiffs Do Not Sufficiently Allege a Claim Under Any Prong of the UCL (Count 5).

Plaintiffs invoke the "fraudulent," "unlawful," and "unfair" prongs of the UCL, but none applies here. *See* Compl. ¶¶ 142, 146. Because Plaintiffs have not alleged an actionable misrepresentation or omission as discussed above, they cannot satisfy the UCL's "fraudulent" prong. *See supra*, Section I. They also cannot state a claim under the UCL's "unlawful" prong because they have not adequately alleged a violation of another law. *See Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1027-29 (N.D. Cal. 2012); *In re Apple Processor Litig.*, 2022 WL 2064975, at *12 (N.D. Cal. June 8, 2022) (dismissing "unlawful" and "fraudulent" claims that were predicated on same allegations as other failed claims). Finally, to state a claim under the "unfair" prong, Plaintiffs must either identify a violation of a public policy that is "tethered to specific constitutional, statutory, or regulatory provisions," or allege that P&G's business practice is so "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" that the harm it causes outweighs any benefits. *See Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010). Plaintiffs have not satisfied either "unfair" prong test. They first attempt to allege that the Product labels violate the FTC's bait advertising guidance, which prohibits advertising claims that "create[] a false impression of the grade, quality, . . . or origin of the product offered," but this theory fails for the same reasons that Plaintiffs have not alleged an actionable misrepresentation. *See* Compl. ¶ 146; *Drum*, 182 Cal. App. 4th at 257 (plaintiffs failed to state "unfair" prong claim for same reasons that other claims under other prongs failed). Nor have Plaintiffs alleged facts plausibly showing that P&G's purported conduct is "unethical, oppressive, unscrupulous, or substantially injurious," or that the benefits of conveying accurate information about the Products' content were outweighed by any alleged harm. *Drum*, 182 Cal. App. 4th at 257.

### C. The Common-Law Claims Suffer From Multiple Defects (Counts 1, 4).

Plaintiffs' negligent misrepresentation and fraud claims also should be dismissed under the economic loss rule and because Plaintiffs do not adequately allege knowledge of falsity or that P&G lacked reasonable grounds for believing the Natural Origin Claims were true.

Under California law, the economic loss doctrine precludes tort claims when a plaintiff suffers only economic damages as opposed to physical injury or injury to property. Because Plaintiffs only seek

to recover for economic damages stemming from their purchases of the Products, the economic loss doctrine precludes their misrepresentation claims. *See, e.g.*, *Madrigal v. Hint, Inc.*, 2017 WL 6940534, at *3 (C.D. Cal. Dec. 14, 2017) (dismissing negligent misrepresentation claim under economic loss rule); *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1105-06 (C.D. Cal. 2015) (same for fraud and negligent misrepresentation claims).

Plaintiffs' negligent misrepresentation and fraud claims fail for the additional reason that Plaintiffs do not adequately allege the mental state required by either claim. To state a negligent misrepresentation claim, Plaintiffs must allege a false statement that P&G honestly believed to be true, but that it lacked "reasonable grounds for such belief." *Madrigal*, 2017 WL 6940534, at *3 (quoting *Century Sur. Co. v. Crosby Ins., Inc.*, 124 Cal. App. 4th 116, 129 (2004)). To state a fraud claim, Plaintiffs must allege that P&G knew the statement was false at the time it was made. *See Lazar v. Superior Ct.*, 909 P.2d 981, 984 (Cal. 1996). Plaintiffs' only factual allegation related to either element is that "P&G knows or should know that its claims are false and/or misleading, because the BSI explicitly stated in the ISO 16128 publication that 'Neither ISO 16128-1 nor this document [i.e., ISO 16128-2] addresses product communication (e.g. claims and labelling), . . . characteristics of packaging materials or regulatory requirements applicable for cosmetics.'" Compl. ¶ 79. But a disclaimer that a document does not address regulatory requirements—which vary by jurisdiction—does not mean that the standard is per se inappropriate for labels under California law, as Plaintiffs suggest. *Id.* And Plaintiffs do not even adequately allege that the Natural Origin Claims were false or misleading, let alone that P&G knew that they were. *See supra*, Sections I.A-E.

## III. Plaintiffs Lack Standing to Assert Certain Aspects of Their Claims.

Even if Plaintiffs' claims could overcome dismissal, Plaintiffs lack Article III and/or statutory standing to assert three particular aspects of their claims.

*First*, Plaintiffs have standing only to sue over the products they purchased: Herbal Essences Argan Oil Shampoo, Herbal Essences White Charcoal Conditioner, and Pantene Apricot & Aloe Vera Shampoo and Conditioner. Compl. ¶¶ 83, 88. P&G appreciates that this Court has previously held that "a named plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar."

*Collyer*, 2024 WL 202976, at *2 (cleaned up).  That test is not satisfied here, however, because the Products themselves are not "substantially similar."  Numerous courts have held that "where the actual composition . . . of the product is legally significant to the claim at issue, the consumer may only be allowed to pursue claims for products with identical product compositions." *Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014); *see also Lopez v. Zarbee's, Inc.*, 2023 WL 210878, at *7 (N.D. Cal. Jan. 17, 2023) (similar).  Here, both the specific wording of the Natural Origin Claim and the product composition vary from product to product, as evidenced by Appendix B to the Complaint.  In addition, the product compositions are crucial to each of Plaintiffs' claims.  Accordingly, Plaintiffs lack standing to assert claims over other Herbal Essences and Pantene Products except for the three versions they allegedly purchased. *See, e.g.*, *Lopez*, 2023 WL 210878, at *7 (no standing to sue over unpurchased melatonin supplements because melatonin content differed).

   *Second*, Plaintiffs do not have Article III or statutory standing to assert claims based on statements on P&G's website that Plaintiffs never claim to have seen or relied on.  *See Chaplin v. Walmart, Inc.*, 2023 WL 4843956, at *4 (N.D. Cal. May 25, 2023) (explaining that to establish statutory standing under the UCL, CLRA, or FAL, "a plaintiff must allege reliance on the purported misrepresentations at issue and economic injury as a result" and dismissing for lack of standing claims based on website advertisements plaintiff did not allege seeing).  At various points, the Complaint suggests that P&G made misleading statements about the Natural Origin Claims on its website.  *See* Compl. ¶¶ 40, 47-51.  But Plaintiffs never allege that they saw any of these statements or that the statements influenced their decision to purchase the Products.  Plaintiffs thus lack Article III and statutory standing to assert claims based on "statements or advertisements that [they] never saw." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1197 (N.D. Cal. 2014) (dismissing for lack of Article III standing claims based on statements on a defendant's website because the plaintiff "does not contend that she did in fact see" those statements); *see also Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 21 (N.D. Cal. 2020) ("assessing a website with regard to plaintiffs' claims is not appropriate when plaintiffs did not purchase the product or allege that they used the website"); *Bruton v. Gerber Prods. Co.*, 2014 WL 172111, at *9 (N.D. Cal. Jan. 15, 2014) (dismissing "claims based on website statements [plaintiff] did not view").

1    *Third*, Plaintiffs lack standing to seek injunctive relief.  To have Article III standing to pursue

2    injunctive relief, Plaintiffs must also allege facts plausibly showing "a sufficient likelihood that [they] will

3    again be wronged in a similar way."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir.

4    2018) (cleaned up).  Plaintiffs allege that they continue to be interested in haircare products made with

5    natural and naturally derived ingredients, and that they do "not know whether any P&G hair care products

6    [they] may purchase in the future will be subject to the same false advertising," but for several reasons

7    that is insufficient to allege a risk of future harm.  Compl. ¶¶ 87, 92.

8    First, Plaintiffs do not actually allege an intent to purchase the same products again in the future,

9    which is fatal to their request for injunctive relief.  *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, 2019

10   WL 2515919, at *5 (N.D. Cal. June 18, 2019) (rejecting argument that an alleged "inability to trust the

11   labels" was sufficient to confer standing to pursue injunctive relief where plaintiff did not plead any intent

12   to purchase products again).  Second, they do not allege that they would likely suffer the same harm again,

13   even if they did buy the same products again.  The premise of all of Plaintiffs' claims is that they did not

14   understand what P&G meant by the Natural Origin Claims.  But Plaintiffs can no longer claim to be

15   unaware of the meaning of "natural origin" or "naturally derived," particularly now that they know about

16   the back-label explanations.  So long as they see the same explanation on a label, they will be able to

17   "evaluate product claims and make appropriate purchasing decisions," meaning "injunctive relief would

18   serve no meaningful purpose."  *Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1080 (N.D.

19   Cal. 2022) (cleaned up); *see also Reynolds v. Coca-Cola Co.*, 2023 WL 7093683, at *3 (N.D. Cal. Oct.

20   25, 2023) (plaintiff lacked standing for injunctive relief because he "will never again be misled by

21   statements about the healthfulness of a 100% fruit juice product").

## CONCLUSION

23   For the reasons stated, the Complaint should be dismissed.

Dated: May 6, 2024

Respectfully submitted,

*/s/ Cortlin H. Lannin*

Cortlin H. Lannin (Bar No. 266488)
Amy S. Heath (Bar No. 312516)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile: (415) 955-6558
Email: clannin@cov.com
Email: aheath@cov.com

*Counsel for Defendant*
*The Procter & Gamble Co.*